RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0173p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

MICHAEL SOUTHARD,

    *Plaintiff-Appellee*,

    *v*.

NEWCOMB OIL COMPANY, LLC,

    *Defendant-Appellant*.

No. 20-5318

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:18-cv-00803—Charles R. Simpson, III, District Judge.

Argued: June 11, 2021

Decided and Filed: August 4, 2021

Before: COLE, BUSH, and NALBANDIAN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** John O. Sheller, STOLL KEENON OGDEN PLLC, Louisville, Kentucky, for Appellant. Ori Edelstein, SCHNEIDER WALLACE COTTRELL KONECKY LLP, Emeryville, California, for Appellee. **ON BRIEF:** John O. Sheller, Jeffrey A. Calabrese, Steven T. Clark, STOLL KEENON OGDEN PLLC, Louisville, Kentucky, for Appellant. Ori Edelstein, Carolyn H. Cottrell, William Hogg, SCHNEIDER WALLACE COTTRELL KONECKY LLP, Emeryville, California, for Appellee.

_____

**OPINION**

_____

    COLE, Circuit Judge.  To use the Federal Arbitration Act to enforce an arbitration agreement, a party must have entered an arbitration agreement. This admittedly tautological

principle resolves the first part of this case. An equally fundamental principle resolves the second part: declining to exercise supplemental jurisdiction over an action with no remaining federal claims is not an abuse of discretion. We affirm.

I.

Michael Southard worked as a convenience store attendant for Newcomb Oil from 2017 to 2018. In November 2018, Southard filed a putative class action in Kentucky state court alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, in addition to a variety of state-law claims for failure to pay overtime, failure to provide meal and rest periods, untimely payment and withholding of wages, failure to provide statements of wage deductions, as well as a common-law unjust enrichment claim. Newcomb removed the case to federal court, and six days later Southard amended his complaint to delete the lone federal claim under the FLSA.

Because Newcomb's employee handbook and employment application contained various alternative dispute resolution provisions, Newcomb moved to dismiss Southard's complaint or, in the alternative, to stay the action pending arbitration. The district court concluded that the parties did not form an agreement to arbitrate under the FAA and denied Newcomb's motion to dismiss or stay. It then remanded Southard's remaining state-law claims to state court.

Newcomb appeals, arguing that the provisions constituted an agreement to arbitrate under the FAA, and in the alternative that the district court abused its discretion by declining to exercise supplemental jurisdiction over Southard's state-law claims.

II.

A.     ARBITRATION AGREEMENT

First, a bit of background on federal arbitration law. The FAA provides two means of invoking arbitration. If an issue pending in a federal suit "is referable to arbitration," section 3 says that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3.

Case 3:18-cv-00803-CRS   Document 39-1   Filed 08/04/21   Page 3 of 6 PageID #: 506

No. 20-5318                    *Southard v. Newcomb Oil Co., LLC*                    Page 3

Section 4 allows a party to "petition" the district court for an "order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4.

Newcomb invoked arbitration through a "motion to dismiss or, in the alternative stay pending individual arbitration," citing a grab bag of Rule 12(b)(6) and 9 U.S.C. §§ 3–4. We will simply refer to it as a motion to stay because the FAA does not provide for dismissal as a remedy. *See United States ex rel. Dorsa v. Miraca Life Scis., Inc.*, 983 F.3d 885, 887–88 (6th Cir. 2020). To invoke FAA remedies under section 3 or 4, the parties must have entered into a "written agreement for arbitration." 9 U.S.C § 4. Generally, state law governs questions of contract formation. *Tillman v. Macy's, Inc.*, 735 F.3d 453, 456 (6th Cir. 2013). But whether the parties have agreed to "arbitration" under the FAA is, of course, a matter of interpreting federal law. *See Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 693 (6th Cir. 2012).

There is a "liberal federal policy favoring arbitration agreements," which is, "at bottom a policy guaranteeing the enforcement of private contractual arrangements." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) (first quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)). But the "presumption" favoring arbitration, as it is sometimes called, applies only to the scope of an arbitration agreement, not to its existence. *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 302–03 (2010). "[N]o matter how strong the federal policy favors arbitration, 'arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration.'" *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (quoting *United Steelworkers, Local No. 1617 v. Gen. Fireproofing Co.*, 464 F.2d 726, 729 (6th Cir. 1972)). We review a district court's decision on a motion to stay or compel arbitration de novo. *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 194 (6th Cir. 2016).

Unfortunately, despite it being the titular term, the FAA does not define arbitration. Instead, we evaluate whether an agreement qualifies as FAA arbitration based on "how closely it resembles classic arbitration." *Evanston*, 683 F.3d at 693. The common features of classic arbitration include 1) "a final, binding remedy by a third party," 2) "an independent adjudicator,"

3) "substantive standards," and 4) "an opportunity for each side to present its case." *Id.* (quoting *Fit Tech, Inc., v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 7 (1st Cir. 2004)).

The agreement (if any) between Southard and Newcomb bears none of those hallmarks. The parties point to three provisions that could give rise to an enforceable arbitration agreement.

First, in Southard's application for employment:

> As a condition of employment, I accept that any complaint or conflict that cannot be resolved internally may be referred to Alternative Dispute Resolution, unless prohibited by law, before any other legal action is taken.

Second, midway through the employee handbook:

> As an employee of Newcomb Oil Co., you agree to Alternative Dispute Resolution a forum or means for resolving disputes, as arbitration or mediation, that exists outside the state or federal judicial system, unless prohibited by law, as a means to resolve any disputes and/or complaints that cannot be resolved internally.

Third, the final page of the employee handbook states:

> If there is a conflict that cannot be resolved between the employee and the company, both agree that the matter will be referred to mediation.

There is some dispute between the parties as to whether these provisions constitute a valid contract. We need not resolve that issue of state law because we find that, even if the parties entered into a valid contract, they did not agree to classic arbitration.

The above provisions make it apparent that Newcomb and Southard agreed to alternative dispute resolution generally, not arbitration specifically. Black's Law Dictionary defines alternative dispute resolution as: "Any procedure for settling a dispute by means other than litigation, as by arbitration or mediation." *Alternative Dispute Resolution*, Black's Law Dictionary (11th ed. 2019). An agreement to participate in ADR could encompass a whole slew of different processes—really, almost any means of resolving a dispute other than litigation. What precise form of ADR the parties agreed to here is unclear.

Suffice it to say, though, that the agreement does not resemble "classic arbitration." Not all forms of ADR involve the hallmark of arbitration: "a final, binding remedy by a third party."

*Evanston*, 683 F.3d at 693. Most notably, arbitration is juxtaposed with mediation, which, while also overseen by a neutral third party, is non-binding in nature. *Compare Mediation*, Black's Law Dictionary (11th ed. 2019) ("A method of nonbinding dispute resolution involving a neutral third party who tries to help the disputing parties reach a mutually agreeable solution."), *with Arbitration*, Black's Law Dictionary (11th ed. 2019) ("A dispute-resolution process in which the disputing parties choose one or more neutral third parties to make a final and binding decision resolving the dispute. . . . Also termed (redundantly) binding arbitration."). If anything, given that the final page of the employee handbook specifies mediation, it seems most likely that the parties contemplated mediation, not arbitration.

But we need not speculate further. Newcomb did not draft an arbitration agreement. It cannot now turn to the FAA for its arbitration-specific remedies.

B. SUPPLEMENTAL JURISDICTION

Newcomb argues in the alternative that the district court erred by remanding Southard's remaining state-law claims to state court. We review this decision for an abuse of discretion. *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010).

District courts "shall have supplemental jurisdiction over all other claims that . . . form part of the same case or controversy" as the claim over which the court has original jurisdiction. 28 U.S.C. § 1367(a). But a court "may decline to exercise supplemental jurisdiction over a claim" in one of four situations:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id*. § 1367(c).

Subsection (c)(2) permits district courts to remand state-law claims when few, or no, federal claims remain.  The district court had original jurisdiction over Southard's FLSA claim.  But when the complaint was amended, and that federal claim deleted, the state-law claims necessarily predominated over the (now non-existent) federal claim.  *See Enochs v. Lampasas County*, 641 F.3d 155, 159 (5th Cir. 2011) ("[S]tate law claims predominate over the non-existent federal claims.").

Once a federal court no longer has federal claims to resolve, it "should not ordinarily reach the plaintiff's state-law claims."  *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).  Were the district court to maintain supplemental jurisdiction here, it would resolve exclusively state-law wage and hour claims, and a common-law claim.  It was not an abuse of discretion to decline to do so.

### III.

We affirm the district court's order denying Newcomb's stay motion and its order remanding the remaining claims to state court.